989 F.2d 493
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Louise LANDRY, Plaintiff-Appellant,
v.
U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 92-1889.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: January 29, 1993
Decided: March 26, 1993
 
 Appeal from the United States District Court for the District of South Carolina, at Aiken. William B. Traxler, Jr., District Judge. (CA-90-1062-1)
 Mary J. Wiesen-Kosinski, Aiken, South Carolina, for Appellant.
 Stuart M. Gerson, Assistant Attorney General, E. Bart Daniel, United States Attorney, Bruce R. Granger, Chief Counsel, Mack A. Davis, Deputy Chief Counsel, Mary Ann Sloan, Principal Regional Counsel, Holly A. Grimes, Supervisory Assistant Regional Counsel, Cheryl L. Nikonovich-Kahn, Assistant Regional Counsel, Laurie G. Remter, Assistant Regional Counsel, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Atlanta, Georgia, for Appellee.
 D.S.C.
 AFFIRMED.
 Before NIEMEYER and HAMILTON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Louise Landry (Claimant) appeals from the district court's order affirming a decision of the Secretary of Health and Human Services denying her application for Social Security disability benefits. Finding that substantial evidence existed to support the Secretary's decision, we affirm.
 
 
 2
 Claimant filed a claim in 1988 for Social Security disability benefits, alleging that she became disabled with arthritis and fibrositis on November 15, 1987. Claimant was last insured for disability insurance benefits on December 31, 1987. Therefore, Claimant was required to prove that she became disabled prior to December 31, 1987.
 
 
 3
 Her application was denied initially and upon reconsideration. Claimant then requested an administrative hearing, which was held on May 31, 1989. Claimant was represented by counsel at the hearing. Claimant, her brother, and a vocational expert testified, and voluminous medical records were presented to the administrative law judge (ALJ).
 
 
 4
 The ALJ issued a decision in June 1989 denying benefits based upon Claimant's ability to perform her past relevant work as a clerktypist, at least through the date she was last insured for benefits. The Appeals Council denied Claimant's request for review in March 1990, and in May 1990 Claimant filed this civil action pursuant to the Social 6350 35 1 Security Act, 42 U.S.C.A. § 405(g) (West 1991).
 
 
 5
 After reviewing the evidence, the magistrate judge recommended that the Secretary's decision be affirmed. Claimant filed objections to the magistrate judge's report. The district court adopted the magistrate judge's report and affirmed the Secretary's decision in June 1992. Claimant timely appealed, alleging that the denial of benefits was not supported by substantial evidence.
 
 
 6
 We may not engage in a de novo review of the evidence, but must uphold the Secretary's decision if it is supported by substantial evidence. 42 U.S.C.A. § 405(g); Hays v. Sullivan, 907 F.2d 1453 (4th Cir. 1990); Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion, more than a scintilla but somewhat less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is the duty of the ALJ, not the Court, to make findings of fact and resolve conflicts in the evidence. Hays v. Sullivan, 907 F.2d at 1456.
 
 
 7
 To be considered disabled, an individual's physical or mental impairment or impairments must be of such severity that the individual is unable to perform not only his or her previous work, but, considering the individual's age, education, and work experience, any other kind of substantial gainful activity which exists in the national economy. 42 U.S.C.A. §§ 416(i)(1), 423(d)(2) (West 1991). The burden of proof is on the claimant to establish that she has a medically determinable physical or mental impairment and that the impairment prevents her from performing substantial gainful activity. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).
 
 
 8
 In cases in which a claimant alleges a non-exertional impairment, including pain, the claimant must present medical evidence of a condition that could reasonably be expected to produce pain. Objective evidence of pain or its magnitude is not required. Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986). If the ALJ finds complaints of pain or the magnitude of pain to be incredible, she must give specific reasons for her finding. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).
 
 
 9
 The evidence presented at the administrative hearing showed that Claimant was fifty-eight years old when last insured for benefits.
 
 
 10
 Although she graduated from high school, attended two years of college, and received some technical training, her work experience was primarily in part-time clerical or secretarial positions provided through government programs. Claimant last worked in October 1987; she testified that she left work because she lost the government grant which had paid for her training.
 
 
 11
 Claimant alleged she could not work after November 15, 1987, because of pain throughout her body caused by arthritis and fibrositis. She also alleged that she suffered from extreme nervous anxiety brought on by low levels of stress. Despite her pain, however, Claimant was able to perform housework, cook, shop, walk, drive, and visit with friends and relatives. Claimant did not receive psychological counseling between November 15, 1987, and December 31, 1987.
 
 
 12
 Claimant's brother testified at the hearing that she complained of pain, was indecisive, and seemed to have great difficulty concentrating during extended conversations, but that she did not appear to have problems using her hands. The vocational expert testified that Claimant's past relevant work fell primarily in the sedentary category and would be described as semi-skilled. The vocational expert testified that the stress levels involved in Claimant's past relevant work would be at the lower end of the spectrum.
 
 
 13
 Claimant presented little medical evidence from the relevant time period to substantiate her claims. Dr. Michael Cohen, Claimant's treating physician, treated Claimant during the relevant time period for joint pain, but noted that her main problem was depression. Dr. Cohen diagnosed fibrositis, osteoarthritis, and depression, and indicated that Claimant would be limited by her mental problems in her ability to perform work activity.
 
 
 14
 Claimant presented evidence that she had been treated in 1984 by Dr. Tikare, a psychiatrist, for complaints of anxiety and depression. Dr. Tikare concluded that Claimant had a dependent personality and became depressed when her needs were not met. He diagnosed dysthymic disorder and recommended medication and counseling.
 
 
 15
 Claimant discontinued her medication in September 1984 due to financial problems, and sought no further treatment from Dr. Tikare.[1]
 
 
 16
 In response to a request from the Disability Determination's office in July 1988, Dr. Cohen acknowledged that there were not many objective physical findings of impairment, but opined that Claimant's combination of psychiatric and physical problems made it "almost impossible" for her to work. In December 1988 Dr. Cohen completed a medical assessment form which reflected his opinion that Claimant should be placed under numerous lifting, weight, and environmental restrictions.
 
 
 17
 Finally, the ALJ considered the evaluation of Dr. O'Leary, a psychologist who evaluated Claimant at the suggestion of Claimant's attorney in December 1988. Dr. O'Leary diagnosed obsessivecompulsive personality disorder with a depressive reaction, with significant functional limitations including little or no ability to make certain occupational, social, and performance adjustments.
 
 
 18
 Based on the medical evidence and testimony, the ALJ found that, while insured for benefits, Claimant retained the residual functional capacity to perform sedentary work which would allow her to alternate sitting and standing and would not expose her to high stress or require frequent interaction with others. Despite finding that Claimant had severe impairments including osteoarthritis, possible fibrositis, a dysthymic disorder, anxiety, dependent personality, and early cataracts, the ALJ determined that Claimant could perform her past relevant work as a clerk-typist with the above restrictions. Accordingly, the ALJ found that Claimant was not disabled within the meaning of the Act, and denied benefits.
 
 
 19
 In reaching her decision, the ALJ considered the lack of medical evidence documenting Claimant's symptoms, as well as Claimant's daily activities,[2] her absence from or refusal to participate in aggressive treatment, and the frequency, intensity and consistency of her alleged symptoms. We will not disturb this credibility determination which is supported by substantial evidence of record. Hays v. Sullivan, 907 F.2d at 1456; Hammond v. Heckler, 765 F.2d at 426.
 
 
 20
 The ALJ accorded little weight to Dr. Cohen's December 1988 disability opinion, because his physical findings of arthritis and fibrositis provided no basis for the extensive physical limitations he imposed on Claimant. Dr. O'Leary's December 1988 evaluation was likewise accorded little weight because it was developed one year after Claimant's eligibility for disability benefits expired.
 
 
 21
 The ALJ gave reasons for finding that the physical capacity evaluations of Dr. Cohen, the treating physician, and Dr. O'Leary exaggerated Landry's limitations. The ALJ found that Landry's daily activities were inconsistent with the physical limitations ascribed to her by Dr. Cohen. Although Dr. Cohen was Landry's treating physician, the ALJ was entitled to discount his evaluation because of the existence of this persuasive contradictory evidence. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).
 
 
 22
 We find that, taking the record as a whole, substantial evidence existed to support the ALJ's finding that Claimant was not disabled prior to the expiration of her insured status. Conflicts in the evidence and credibility determinations are within the discretion of the ALJ, and we may not substitute our judgment for that of the ALJ. Hays v. Sullivan, 907 F.2d at 1456. Although Claimant appears to suffer from various disorders and medical conditions, she simply failed to show that she became totally disabled prior to December 31, 1987. The medical evidence does not support her claim.
 
 
 23
 The district court properly found that the Secretary's decision was supported by substantial evidence. Accordingly, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Claimant also presented the medical records of several other doctors who had treated her from time to time, but the records revealed no significant impairments
 
 
 [2]
 The ALJ may look to a claimant's daily activity patterns as evidence of disability. Gross v. Heckler, 785 F.2d at 1168